## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MARK HARWOOD, and ASHLEY HARWOOD, husband and wife, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 25-CV-90-GLJ |
| v. | ) ) | |
| UPONOR, INC. and UPONOR NORTH AMERICA, INC., | ) ) ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Before the Court is the Motion of Defendant Uponor North America, Inc to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, to Compel Arbitration [Docket No. 20] and Motion of Defendant Uponor, Inc to Compel Arbitration [Docket No. 22]. For the reasons stated below, the Court finds that Motion of Defendant Uponor North America, Inc. to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, to Compel Arbitration [Docket No. 20] should be GRANTED IN PART, and the Motion of Defendant Uponor, Inc. to Compel Arbitration [Docket No. 22] should be DENIED.

## BACKGROUND

In 2016 Mark and Ashley Harwood ("Plaintiffs") purchased a home in Coweta Oklahoma equipped with a potable water supply system fitted with PEX flexible tubing. Docket No. 2, at ¶ 11. The PEX products were designed, manufactured, marketed, distributed and sold by Uponor, Inc ("UI"), and installed in Plaintiffs' residence on or about

February 1, 2012. *Id.* at ¶ 2. On or about November 8, 2022, the PEX tubing in the Plaintiffs' home failed causing water damage to their home. Docket No 2, at ¶ 12; Docket No. 33-1, at ¶ 7. Water leaks occurred on at least two more occasions and, in 2023, Plaintiffs replaced the PEX tubing. Docket No. 33-1, at ¶10. In November 2023 Mr. Harwood learned UI utilized an online portal whereby customers could submit "complaints" and created a "project," combining the three incidents of water damage and submitted a claim to warrantyclaims.us@uponor.com on November 9, 2023, for the expenses they had incurred. *Id.* at ¶ 111; Docket No 21-1, at pp. 7-8. Mr. Harwood submitted samples of his pipes that underwent inspection and testing by UI to determine whether they met standard quality. Docket No. 23-1, at p. 3. UI denied Mr. Harwood's claim and supplied him a copy of the "Uponor Plumbing Systems Limited Warranty" ("Warranty") on January 15, 2024, but offered to provide new PEX materials at no cost. Docket No. 33-1, at ¶ 12; Docket No. 23-1, at p. 12-14. Plaintiffs assert that prior to this date they had not seen or been provided a copy of the Warranty nor agreed to its terms. Docket No. 33-1, at ¶ 12. The Warranty, as in effect on date of installation, provided in pertinent part:

> If *You*[1] believe *Uponor* has failed to comply with its obligations set forth in this limited warranty, *You* should send a written complaint detailing the alleged failure(s) to Uponor[.] . . . *You* and *Uponor* shall in good faith discuss and attempt to resolve such warranty claim dispute though informal means.

---

[1] "You" is defined as "(1) the distributors and other customers who purchase products warranted hereunder directly from Uponor, (2) their respective customers who purchase such products for resale or installation on or in real property, (3) the owner(s) of the real property in which such products are installed on the applicable *Installation Date*, and (4) any subsequent owners of such real property during the ten (10) year period following the applicable *Installation Date.*" Docket No. 23-1, at p. 21.

> If such informal dispute resolution process proves unsuccessful after thirty (30) days, or if there is any other claim or dispute between the parties in any way regarding the design, manufacture, sale, distribution or condition of any product, whether such claim or dispute is based on contract, warranty, tort or otherwise, then either party may submit the dispute to the American Arbitration Association or its successor for arbitration[.]

Docket No. 23-1, at pp. 20-21. (italics in original). The Warranty also contained a provision prohibiting all class action claims and a choice of law provision requiring all claims be construed under the laws of Minnesota. Docket No. 23-1, at p. 21.

Plaintiffs, on behalf of themselves, and all persons similarly situated, bring three causes of action against Uponor Inc. and Uponor North America, Inc. ("UNA"): (i) strict product liability, (ii) breach of implied warranty of merchantability, and (iii) violations of the Oklahoma Consumer Protection Act.  Docket No. 2. UI moves to compel this matter to arbitration pursuant to the arbitration clause contained in the Warranty [Docket No. 22] and UNA moves to dismiss the claims against it for want of personal jurisdiction and, alternatively, to compel arbitration [Docket No. 20].

## ANALYSIS

### I.    Choice of Law

As an initial matter the Court must determine what state law is to govern this matter. "A federal court sitting in diversity applies the substantive law, including choice of law rules, of the forum state." *Barrett v. Tallon*, 30 F.3d 1296, 1300 (10th Cir. 1994). Oklahoma law provides that "[a] contract is to be interpreted according to the law and usage of the place where it is to be performed, or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." OKLA. STAT. tit. 15, § 162.

"Oklahoma Courts assume that Oklahoma law governs, unless a party asserting that a different law applies carries 'its burden of identifying and invoking' another state's law. Said party must plead and prove that an actual conflict between the bodies of law exists. . . . Where two bodies of law do not conflict, the result is deemed a 'false conflict' or no conflict at all, and no choice of law analysis be made.'" *Cartessa Aesthetics, LLC*, 2024 WL 5047472, at \*4 (W.D. Okla. Dec. 9, 2024); *Ky. Bluegrass Contracting, LLC v Cincinnati Ins. Co.*, 363 P.3d 1270, 1274 (Okla. Ct. App. June 24, 2015) ("Oklahoma has long abided by the rule that the law of another jurisdiction presents a question of fact and must be pleaded and proved before it could be considered by the trial court. More recently, the Oklahoma Supreme Court held one who asserts that a law different from that of Oklahoma governs the dispute bears the *burden* of identifying and invoking that other law.") (emphasis in original).

Here, Defendant UI invokes and argues that Minnesota law applies due to a choice of law provision contained in the Warranty. Docket No. 23. However, "reflexively applying 'the choice-of-law clause to resolve the contract formation issue would presume the applicability of a provision before its adoption by the parties has been established.'" *Cartessa Aesthetics, LLC*, 2024 WL 5047472, at \*3 (quoting *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012)); *see B-S Steel of Kan., Inc. v. Tex. Indus., Inc.*, 439 F.3d 653, 661 n.9 (10th Cir. 2006) (recognizing there is a "logical flaw inherent in applying a contractual choice of law provision before determining whether the underlying contract is valid."). Plaintiffs assert that there is no conflict between Oklahoma and Minnesota law and UI does not contest such assertion. Docket No. 34. Accordingly, because UI does not

plead and prove that an actual conflict exists between the two bodies of law, the Court applies Oklahoma law.

## II.    Declaration of Kelsey Grossman

Plaintiffs next object to the declaration of Kelsey Grossman as attached to Defendant UI's Motion because they assert it is unreliable in that it contains references to a "Mr. Warner," that is not related to this dispute. Docket No. 33, at p.12. Plaintiffs therefore request all portions of Kelsey Grossman's Declaration that conflict with the declaration of Mark Harwood be stricken. *Id.* UI reports that the references to Mr. Warner are typographical errors and should be construed as references to Mr. Harwood as evidenced and supported by the e-mails attached to Ms. Grossman's declaration. Docket No. 34, at p. 5. The Court finds this explanation sufficient and declines to strike any portions of Ms. Grossman's declaration.

## III.    Motion to Dismiss Pursuant to 12(b)(2)

Defendant UNA moves to dismiss Plaintiffs claims against it, pursuant to Fed. R. Civ. P. 12(b)(2), for want of personal jurisdiction arguing that UNA did not design, manufacture, market, advertise, sell, or distribute the PEX tubing, and UNA is organized under the laws of Delaware with its principal place in Minnesota. Docket Nos. 20 & 21. In response to UNA's motion, Plaintiffs "stipulate to the dismissal as requested in the motion." Docket No. 32. Accordingly, the Motion of Defendant Uponor North America, Inc. to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, to Compel Arbitration [Docket No. 20] is hereby GRANTED IN PART to the extent it requests UNA

be dismissed from this action. Thus, Defendant Uponor North America, Inc., is hereby dismissed without prejudice.

## IV.    Motion to Compel Arbitration

Defendant UI moves to compel this matter to arbitration based on the arbitration provision contained in the Warranty. Plaintiffs maintain that there is not a valid arbitration agreement under Oklahoma law. In response, UI does not present this Court with a signed agreement nor does it maintain that Plaintiffs agreed to arbitrate their claims, instead UI argues Plaintiffs are obligated to arbitrate their claims because they are equitably estopped from claiming the arbitration provision is not binding since they submitted a warranty claim. Docket No. 23. The Court disagrees and finds Plaintiffs are not estopped from challenging the arbitration provision of the Warranty.

"The Supreme Court has 'long recognized and enforced a liberal federal policy favoring arbitration agreements.'" *Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir. 2002) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)). Whether the parties have a valid arbitration agreement is a gateway matter which is "presumptively for courts to decide." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569, n. 2 (2013). Arbitration agreements such as the one at issue are governed by the Federal Arbitration Act ("FAA"). Under the FAA, "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "[T]he party moving to compel arbitration bears the initial burden of presenting evidence sufficient to demonstrate

the existence of an enforceable agreement . . .; if it does so, the burden shifts to the nonmoving party to raise a genuine dispute of material fact regarding the existence of an agreement." *BOSC, Inc.* v. *Bd. of Cnty. Comm'rs of Cnty. of Bernalillo*, 853 F.3d 1165, 1177 (10th Cir. 2017) (citing *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012)). "When there is a genuine dispute of material fact[], district courts must 'proceed summarily to . . . trial' to resolve the factual disputes." *Ragab v. Howard*, 841 F.3d 1134, 1138 (10th Cir. 2016) (quoting 9 U.S.C. § 4).  But, "when 'a quick look at the case' reveals that 'no material disputes of fact exist,' a district court may 'decide the arbitration question as a matter of law through motions practice and viewing the facts in the light most favorable to the party opposing arbitration." *BOSC*, 853 F.3d at 1177 (quoting *Howard v. Ferrellgas Partners*, 748 F.3d 975, 978 (10th Cir. 2014)).[2]

"A motion to compel arbitration calls for a two-step inquiry concerning the arbitrability of the dispute: (1) whether there is a valid arbitration agreement, and (2) whether the particular dispute falls within the scope of that agreement." *Williamson v. Dillard's Inc.*, 2019 WL 1338409, at *2 (N.D. Okla. Mar. 25, 2019) (citing *AT&T Techs., Inc. v. Comm's Workers of Am.*, 475 U.S. 643, 648 (1986)). In determining whether a party has agreed to arbitration, the Court applies "ordinary state-law principles that govern the formation of contracts." *Walker v. BuildDirect.com Techs., Inc.*, 733 F.3d 1001, 1004 (10th Cir. 2013)).

---

[2] Here none of the Parties maintain there is a material dispute of fact and a "quick look at the case" does not reveal any.

Oklahoma law requires a "meeting of the minds on all essential terms of the contract." *S. Cent. Indus, v. Kerrtas Mktg., LLC*, 2022 WL 1518935, at *2 (W.D. Okla. Feb. 7, 2022) (quoting *Young v. Chappell*, 239 P.3d 476, 479 (Okla. 2010)). Nonetheless, in limited circumstances arbitration agreements may be enforced by or against non-signatories. *See, e.g.*, *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009); *Guinn v. Cedarhurst Living, LLC*, 2018 WL 5281564, at *3 (D. Kan. Oct. 24, 2018) (collecting cases). Such circumstances can arise under the doctrine of equitable estoppel "when the claims are integrally related to the contract containing the arbitration clause." *Carter v. Schuster*, 227 P.3d 149, 154 (Okla. 2009) (citing *Thomson-CSF, C.A. v. Amer. Arbitration Ass'n*, 64 F.3d 773, 776-79 (2d Cir. 1995)). The elements of equitable estoppel require "(1) a false representation or concealment of facts, (2) made with actual or constructive knowledge of the facts, (3) to a person without knowledge of, or the means of knowing, those facts, (4) with the intent that it be acted upon, and (5) the person to whom it was made acted in reliance upon it to his detriment." *Id.* (citing *Burdick v. Indep. Sch. Dist. No. 52 of Okla. Cnty.*, 702 P.2d 48, 54-55 (Okla. 1985)). Estoppel is often "employed to prevent one party from taking a legal position inconsistent with an earlier action that places the other party at a disadvantage. . . . [It] holds a person to a representation made, or a position assumed, where otherwise inequitable consequences would result to another, who has in good faith, relied upon that representation or position." *Merritt v. Merritt*, 73 P.3d 878, 883 (Okla. 2003). Likewise, under the theory of direct benefits estoppel "a party can become bound to an agreement '(1) by knowingly seeking and obtaining 'direct benefits' from that contract; or (2) by seeking to enforce the terms of that contract or asserting claims

that must be determined by reference to that contract." *Reid v. Doe Run Res. Corp.*, 701 F.3d 840, 846 (8th Cir. 2012) (quoting *Noble Drilling Servs. v. Certex USA, Inc.*, 620 F.3d 469, 473 (5th Cir. 2010)). "Some states have embraced the doctrine of direct-benefits estoppel. Oklahoma has not." *Jacks v. CMH Homes, Inc.*, 856 F.3d 1301, 1306 (10th Cir. 2017).

Defendant UI does not assert that Plaintiffs agreed to the terms of the Warranty, including the arbitration agreement, but instead asserts that Plaintiffs are estopped from arguing they are not bound by the arbitration agreement because Plaintiffs sought to benefit from the Warranty when Mr. Harwood submitted a warranty claim. Docket No. 23. In support of this argument Defendant cites to cases arising out of the Eighth Circuit and the New Mexico Court of Appeals in which these respective courts found non-signatories were estopped from avoiding arbitration on the basis that they could not seek to hold the signatories liable for failing to perform under a contract on one hand, while simultaneously maintaining they could not be compelled to arbitration as non-parties to the agreements. *Dominium Austin Partners, LLC v. Emerson*, 248 F.3d 720, 728 (8th Cir. 2001) ("The appellants also argue that the arbitration clause cannot be enforced because some of the appellees are not parties to the same partnership agreements as appellants. . . . It would be inequitable to allow appellants to claim that these parties are liable for failure to perform under a contract and at the same time to deny that they are contractual parties in order to avoid enforcement of the arbitration clause."); *Damon v. StrucSure Home Warranty, LLC*, 338 P.3d 123, 127-28 (N.M. App. Aug. 19, 2013) ("We hold that Plaintiffs, having voluntarily chosen to seek a direct benefit from the warranty by attempting to enforce its

terms against StrucSure, may not now seek to repudiate one of the warranty's provisions. If Plaintiffs wished to exempt themselves from the arbitration clause, they could have chosen not to claim and enforce any of the rights under the warranty. However, once Plaintiffs voluntarily sought to embrace and invoke the benefits created by the warranty, they could not avoid the arbitration provision in the warranty.").

Plaintiffs assert equitable estoppel does not apply here because they are not seeking to hold UI liable under the terms of the express warranty like the plaintiffs *in Emerson and Damon* did but instead, only submitted a warranty claim without knowledge of the terms of the Warranty, including the arbitration clause contained therein.  In furtherance of their position Plaintiffs cite to *Williams v. TAMKO Building Products, Inc.*, 451 P.3d 146 (Oct 1, 2019). In *Williams*, Daniel and Barbara Williams contacted TAMKO reporting that the shingles on their home were deteriorating and causing structural issues to their home. *Id.* at 149-50. TAMKO instructed plaintiffs to submit a warranty claim, and the Williams complied. *Id.* at 150. The Williams subsequently sued TAMKO alleging claims for product liability, negligent design and manufacture, and failure to warn. *Id.* TAMKO moved to compel the action to arbitration asserting that at the time of receipt each bundle of shingles was wrapped in a limited warranty which contained a mandatory arbitration clause and, because the Williams' contractors purchased and installed the shingles, the Williams had agreed to be bound by the arbitration agreement. *Id.* The Oklahoma Supreme Court concluded that the Williams were not estopped from challenging the arbitration agreement because they "did not know of the arbitration agreement until after they filed a warranty

-10-

claim at the bequest of TAMKO. And, the Homeowners did not make a false representation to conceal facts from TAMKO." *Id.* at 154.

Here, although Plaintiffs did not file a warranty claim at the bequest of UI like the plaintiffs in *Williams*, Plaintiffs, were not aware of the terms of the Warranty prior to submitting a warranty claim and did not make false representations or conceal facts from UI in their warranty claim. Ultimately UI asks this Court to apply a "direct benefits" theory of estoppel arguing that Plaintiffs cannot now avoid arbitration because they sought to directly benefit through the terms of the Warranty by submitting a warranty claim, but Oklahoma has not embraced the doctrine of direct benefits estoppel and Plaintiffs do not seek to enforce the terms of the Warranty against UI in this action. *Brown v. Bob Moore Auto Group, L.L.C.*, 2019 WL 3976848, at *6 (W.D. Okla. Aug. 22, 2019) ("Defendants' reliance on a 'direct benefits estoppel' theory under which a 'non-signatory plaintiff seeking the benefits of a contract is estopped from simultaneously attempting to avoid the contract's burdens, such as the obligation to arbitrate disputes is unavailing. As the *Jacks* court made clear, Oklahoma has not adopted the direct benefits estoppel theory.") (internal citations omitted).

As such, based on the available case law from the Oklahoma Supreme Court, and because Oklahoma has not adopted a direct benefits estoppel theory, the Court concludes that the Oklahoma Supreme Court would likely find Plaintiffs are not estopped from challenging the arbitration agreement. *See Johnson v. Riddle*, 305 F.3d 1107, 1118 (10th Cir. 2002) ("When the federal courts are called upon to interpret state law, the federal court must look to the rulings of the highest state court, and, if no such rulings exist, must

endeavor to predict how that high court would rule."). The Court therefore finds that Plaintiffs are not equitably estopped from asserting they are not bound by the arbitration agreement contained in the Warranty for lack of mutual assent.

In this respect Plaintiffs contend they did not agree to the arbitration provision because they did not have knowledge of the terms of the Warranty prior to submitting their warranty claim, and UI does not challenge this assertion. Nonetheless, "[c]ourts presume that a buyer who had the opportunity to read a contract but did not is bound by the unread terms." *Williams*, 451 P.3d at 151 (citing *Borden v. Day*, 168 P.2d 646, 657 (Okla. 1946). Here, however, there is no evidence Plaintiffs received or had access to a copy of the Warranty prior to submitting their warranty claim. Therefore, Plaintiffs could not have had actual or constructive knowledge of the arbitration agreement and could not consent to its terms. *See Id.* ("The Homeowners could not have had actual knowledge of the arbitration agreement and therefore could not consent. . . . There is no evidence that the homeowners received any notice of the arbitration agreement – not wrapper, not a leaflet, not a brochure. . . . The Homeowners never had the opportunity to read and obtain actual knowledge of the arbitration provision."). Thus, because Defendant UI fails to meet its burden in providing evidence of an enforceable agreement to arbitrate between Plaintiffs and itself, the Court denies Defendant Uponor, Inc.'s Motion to Compel Arbitration.[3]

---

[3] To the extent UI argues in its reply brief that Plaintiffs are bound by the arbitration agreement as successors-in-interest to the original purchasers of their residence, the Court declines to consider this argument because it was raised for the first time in UI's reply brief. *M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 768 n. 7 (10th Cir. 2009) ("The general rule in this circuit is that a party waives issues and argument raised for the first time in a reply brief."); *see also Black & Veatach Corp. v. Aspen Ins. (UK) Ltd.*, 378 F. Supp. 3d 875 989 (D. Kan. 2019) ("The Court will

## CONCLUSION

IT IS HEREBY ORDERED that the (i) Motion of Defendant Uponor North America, Inc. to Dismiss for Lack of Personal Jurisdiction or In the Alternative, to Compel Arbitration [Docket No. 20] is hereby GRANTED IN PART to extent it requests Defendant Uponor North America, Inc. be dismissed from this action without prejudice and DENIED IN PART to the extent it requests this action be compelled to arbitration, and (ii) the Motion of Defendant Uponor, Inc. to Compel Arbitration [Docket No. 22] is hereby DENIED

IT IS SO ORDERED this 3rd day of September, 2025.

**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**

---

not consider arguments raised for the first time in a reply brief, particularly where the arguments could have been made in the first instance.") (internal quotations and citations omitted). The Court does note, however, that even if it proceeded to consider the merits of UI's argument, UI has not provided this Court with evidence indicating that the Harwood's predecessors agreed to or were aware of the terms of the Warranty such that they or their successors would be bound by the arbitration agreement contained therein.