# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

MARK HARWOOD, and )
ASHLEY HARWOOD, )
                       )
                       )
         **Plaintiffs,** )       **Case No. 25-CV-90-GLJ**
                       )
        v. )
                       )
UPONOR, INC., )
                       )
       **Defendant.** )

## OPINION AND ORDER

Plaintiffs Mark Harwood and Ashley Harwood bring this class action alleging Defendant Uponor Inc.'s PEX pipes are defective and leak. Before the Court is the Motion of Defendant Uponor Inc. to Strike Class Allegations [Docket No. 37]. For the reasons stated below, the Court finds that the Motion is DENIED.

## BACKGROUND

In 2016 Plaintiffs purchased a home in Coweta, Oklahoma, equipped with a potable water supply system fitted with PEX flexible tubing. Docket No. 2, at ¶ 11. The PEX products were designed, manufactured, marketed, distributed and sold by Defendant Uponor, Inc. and installed in Plaintiffs' residence. *Id.* at ¶ 8. Plaintiffs allege that Defendant utilized a unique process to apply cross-linked color coatings to its PEX tubing which damaged the tubing causing it to prematurely deteriorate, fail, and damage Plaintiffs' and the putative class members' properties and plumbing systems. *Id.* at ¶¶ 9-13.

Plaintiffs initiated this consumer class action on March 24, 2025, alleging three causes of action against Uponor Inc. and Uponor North America, Inc.: (i) strict product liability, (ii) breach of implied warranty of merchantability, and (iii) violations of the Oklahoma Consumer Protection Act.  Docket No. 2. Defendant Uponor North America, Inc. was dismissed from this action on September 3, 2025. Docket No. 35. Defendant Uponor Inc. moves to strike the class allegations in the Complaint. The Court finds the motion should be denied.

### ANALYSIS

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Federal Rule of Civil Procedure 23(a) requires that a plaintiff seeking to certify a class-action lawsuit establish:

(1) The class is so numerous that joinder of all members is impracticable;
(2) There are questions of law or fact common to the class;
(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) The representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). "In other words, the class must demonstrate the requisite *numerosity, commonality, typicality, and adequacy* to proceed with a class action." *CGC Holding Co., LLC v. Broad and Cassel*, 773 F.3d 1076, 1086 (10th Cir. 2014) (emphasis in original). Plaintiffs "must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast Corp.*, 569 U.S. at 33. "Although courts typically assess the viability of class claims at the certification stage, district courts 'are permitted to make such

determinations on the pleadings and before discovery is complete when it is apparent from the complaint that a class action cannot be maintained.'" *Falhauber v. Petzl America, Inc.*, 656 F. Supp. 3d 1257, 1271 (D. Colo. Feb 14, 2023) (quoting *Elson v. Black*, 56 F.4th 1002, 1006 (5th Cir. 2023)).

Federal Rule of Civil Procedure 12(f) authorizes the Court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter" and may be used as a vehicle in which to strike class allegations, essentially functioning as a "preemptive" motion to deny class certification. Fed. R. Civ. P. 12(f); *Murphy v. Aaron's Inc.*, 2020 WL 2079188, at *4 (D. Colo. Apr. 30, 2020) ("Rule 12(f) is a permissible vehicle in which to file an early motion to deny class certification."). Such preemptive motions are not precluded by Rule 23. *See Wornicki v. Brokerpriceopinion.com, Inc.*, 2015 WL 1403814, at *4 (D. Colo. Mar. 23, 2015) (citing *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 939 (9th Cir. 2009).

"In making the determination of whether striking . . . class allegations is appropriate, 'courts apply the same standards applied at the certification stage, asking whether a complaint's allegations satisfy Federal Rule of Civil Procedure 23's requirements.'" *West v. BAM Pizza Mgmt., Inc.*, 2025 WL 1737920, at *6 (D.N.M. June 23, 2025) (quoting *Faulhaber*, 656 F. Supp. 3d at 1271). Courts in this circuit hold "motions to strike class allegations to a high standard of proof." *Adams-Chevalier v. Spurlock*, 2017 WL 5665149, at *6 (D. Colo. Sept. 25, 2017) (quoting *Wornicki*, 2015 WL 1403814, at *4). Indeed, a motion to strike is a drastic remedy which is "disfavored by courts[, and a] motion to strike class allegations is 'even more disfavored,' because it seeks to 'terminate the class aspects

of litigation, solely on the basis of what is alleged in the complaint,' and before a plaintiff may complete discovery." *Tullie v. Quick Cash, Inc.*, 2014 WL 12782961, *2 (D.N.M. Dec. 2, 2014) (quoting *Francis v. Mead Johnson & Co.*, 2010 WL 3733023, at *1 (D. Colo. Sept. 16, 2010)). "[T]o prevail on a motion to strike class allegations, a defendant 'must demonstrate from the face of plaintiffs' complaint that it will be *impossible* to certify the classes alleged by the plaintiffs regardless of the facts the plaintiffs may be able to prove.'" *Anderson Living Tr. v. WPX Energy Prod., LLC*, 2016 WL 5376325, at *7 (D.N.M. Aug. 27, 2016) (quoting *Francis*, 2010 WL 3733023 at *1); *Ramsay v. Frontier, Inc.*, 2020 WL 4557545, at *24 (D. Colo. July 30, 2020) ("[T]he Court will only grant Frontier's motion to strike if it is able to show conclusively that plaintiffs will be unable to establish facts that would make class treatment appropriate.").

Defendant moves to strike the class allegations in Plaintiffs' Complaint arguing (i) the proposed class members are not easily ascertainable, (ii) the class allegations would require mini-trials on causation, (iii) the economic loss doctrine bars recovery in tort for injury solely to the product itself, and (iv) Oklahoma law requires an identifiable injury. The court finds these arguments unpersuasive at this stage of litigation.

*Ascertainability.*   In the Tenth Circuit, ascertainability is treated "as a sub-requirement of numerosity. To show numerosity, 'there must be presented some evidence of established, *ascertainable* numbers constituting the class[.]'" *Evans v. Brigham Young Univ.*, 2023 WL 3262012, *5 (10th Cir. May 5, 2023) (quoting *Rex v. Owens ex rel Okla.*, 585 F.2d 432, 436 (10th Cir. 1978)); *Shook. v. El Paso*, 386 F.3d 963, 972 (10th Cir. 2004) ("[T]he lack of identifiability is a factor that may defeat Rule 23(b)(3) class certification.").

"For class members to ascertainable, the class definition (1) must be defined clearly and cannot be defined too vaguely, and (2) be defined objectively and cannot be based on subjective criteria, such as by a person's state of mind." *Cline v. Sunoco, Inc. (R&M)*, 159 F.4th 1171, 1196 (10th Cir. 2025) (citing *Mullins v. Direct Digit., LLC*, 795 F.3d 654, 659-60 (7th Cir. 2015)).

Here, the proposed class is defined as "[a]ll persons or entities who own homes or other structures in Oklahoma with Uponor PEX used as the lines and components of a potable water plumbing system." Docket No. 2, at ¶ 22. Plaintiff asserts the members of the class can be easily identified because, determining whether a building uses Uponor's PEX pipes, "requires only an observation of the building's stub outs—the supply connections to toilets, sink valves, and hot water heaters." Docket No. 41, at p. 12. Conversely, Defendant argues the proposed class is not easily ascertainable or administratively feasible because: (i) Uponor's PEX piping is not readily known or observable by property owners, (ii) the pipes are typically acquired by builders or contractors and installed into the property rather than sold directly to the property owners, and (iii) it is insufficient for owners to look for the pipes and submit an affidavit. Docket No. 38, at pp. 7-8.

Although not raised by either party, the Tenth Circuit recently declined to adopt administrative feasibility as "a required element of [the acertainability] test, 'particularly given the strong criticism it has attracted from other courts.'". *Cline*, 159 F.4th at 1195-96 (quoting *Rikos v. Proctor & Gamble Co.*, 799 F.3d 497, 525 (6th Cir. 2015)). "'[A]dministrative feasibility may bear on whether class resolution is superior to individual

resolution,' but it should not operate as a trump card that outweighs all other factors under Rule 23." *Id.* at 1196 (quoting *Freund v. McDonough*, 114 F.4th 1371, 1378 (Fed. Cir. 2024)). Ultimately, at class certification Plaintiffs must show that "class members can ultimately be identified (i.e., they are ascertain-*able* but not necessarily ascertained at the time of class certification) using 'reasonable – but not perfect – accuracy.'" *Id.* (quoting *Rikos*, 799 F.3d at 526).

Defendants argue that various courts, at the class certification stage, have found a class unascertainable or administratively infeasible in similar cases alleging defective products. *See Adams Point I, L.P. v. True-Flex Metal Hose Corp.*, 2020 WL 4199557, at *8 (W.D. Pa. July 17, 2020) (finding unpersuasive plaintiffs' argument that the class can be ascertained by class members looking in their attic or basement); *Lee-Bolton v. Koppers Inc.*, 319 F.R.D. 346, 385 (N.D. Fla. Mar. 20, 2017) (finding no ascertainable class where "there is no objective means for determining which property owners are within that class short of . . . testing every individual home."); *In re Atlas Roofing Corp. Chalet Shingle Prods. Liability Litig.*, 2017 WL 2540822, at * 8 (N.D. Ga. June 9, 2017) (finding plaintiffs failed to demonstrate that the identification of defective shingles was administratively feasible because the defendant did not sell shingles directly to the owner and the plaintiff failed to put forth evidence on how class members could be ascertained.).[1]

---

[1] Of note, the *Adams* case, arises out of the Third Circuit which has adopted a heightened administrative feasibility requirement. *Carrera v. Bayer Corp.*, 727 F.3d 300, 307-08 (3d Cir. 2013) ("A plaintiff does not satisfy the ascertainability requirement if individualized fact-finding or mini-trials will be required to prove class membership. 'Administrative feasibility means that identifying class members is a manageable process that does not require much, if any, individual factual inquiry.'") (quoting William B. Rubenstein & Alba Conte, *Newberg on Class Actions* § 3:3

Although these cases do highlight that Plaintiffs may have some difficulty in ascertaining class members, the Court finds this is an issue more appropriately resolved on Plaintiffs' motion for class certification, after they have had the benefit of complete discovery. *See Carrico v. Uponor, Inc.*, 2025 WL 967542, at * 24-25 (M.D. Tenn. Mar. 31, 2025) (finding striking class allegations before the filing of a motion for class certification on the basis of ascertainability premature despite Defendant's argument that "ascertaining the class members would require 'a deep-dive into the unique condition of each owner's PEX and property, as well as the nature of each owner's interactions if any with [Defendants])'") (alterations in original); *1625 Riviera Homeowners Association v. Uponor, Inc.*, 2026 WL 776964, at *11 (N.D. Cal. Mar. 19, 2026) ("Uponor argues that the class is not ascertainable. But . . . The Ninth Circuit has not adopted an 'ascertainability' requirement. . . . In short, even if ascertainability is a cognizable requirement, it is premature to determine now whether that requirement can be met.").

*Predominance.*  Once the requirements of Fed. R. Civ. P. 23(a) are established, Plaintiff must still satisfy the requirements of Fed. R. Civ. P. 23(b)(1), (2), or (3) to maintain a class action. *See* Fed. R. Civ. P. 23(a) & (b). Rule 23(b)(3) permits class certification where "the court finds that the questions of law or fact common to the class

---

(5th ed. 2011); *see also* C. Wright & A. Miller, *Federal Practice & Procedure* § 1760 & n.13 (4th ed. 2023) ("The Third Circuit has adopted an enhanced ascertainability requirement, focusing on the need for plaintiffs to demonstrate a reliable and administratively feasible method for identifying class members in order to meet certification requirements."). However, the *Lee-Bolton* and *Atlas Roofing* decisions come out of the Eleventh Circuit, which has declined to adopt the administrative feasibility requirement. *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1304 (11th Cir. 2021) ("We hold that administrative feasibility is not a requirement for certification under Rule 23. In doing so, we limit ascertainability to its traditional scope: a proposed class is ascertainable if it is adequately defined such that its membership is capable of determination.").

members predominant over any questions affecting only individual members, and that a class action is superior to the other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "[P]redominance may be destroyed if individualized issues will overwhelm those questions common to the class[.]" *Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, 725 F.3d 1213, 1220 (10th Cir. 2013). "Put differently, the predominance prong asks whether the common, aggregation-enabling, issues in the case are more prevalent or more important than the non-common aggregation-defeating, individual issues." *In re SandRidge Energy, Inc. Sec. Litig.*, 2019 WL 4752268, at *6 (W.D. Okla Sept. 30, 2019) (internal quotations and citations omitted).

Defendant asserts individual questions would predominant as the class allegations would require mini trials on causation because "PEX products can leak for a myriad reasons that have nothing to do with any defect in the product[.]" Docket No. 38, at p. 5. In response Plaintiffs argue that the Court must accept the allegations in the Complaint as true and, as such, striking the class allegations is improper here because they have alleged Defendant's manufacturing process resulted in defective PEX that were the direct and proximate cause of damages. Docket No. 41, at pp. 10-11.

Defendants cite various cases in which courts, in the context of defective products class actions, have found the question of causation predominates over any common questions. *See City of St. Petersburg v. Total Containment, Inc.*, 265 F.R.D. 630, 640-641 (S.D. Fla. Feb. 10, 2010) ("[T]his case involves many different variables requiring individualized proof. FlexPipe was manufactured and distributed by various entities over a 15-year period. . . . In addition, each class member will likely have encountered different

installation, maintenance, and environmental conditions in using FlexPipe. . . . [T]his case simply involves more than can be decided through a showing of generalized proof that a product is generally defective."); *Atlas Roofing Corp.*, 2017 WL 2540822, at *7-8 ("To begin, there are numerous reasons a roof may fail, including commonplace events and ordinary wear and tear. There are also numerous reasons a shingle may blister, crack, or suffer from granule loss. Thus, it is likely that the Defendant will bring at least one causation challenge against most—if not all—putative class members. Because the causation determination for most putative class member will involve individualized evidence, these individual causation questions will predominate at any trial."); *PB Prop. Mgmt. v. Goodman Mfg. Co., L.P.*, 2016 WL 7666179, at *22 (M.D. Fla. May 12, 2016) ("Even if Plaintiffs could produce evidence that Goodman's copper evaporator coils contain a common defect—the propensity to develop formicary corrosion and leak refrigerant—the question of *whether* and *why* a particular coil failed are individual questions that will be unique to each class member and would overwhelm the litigation.").

Defendant also cites, *West v. Chapparal Energy, LLC*, 2018 8264338 (W.D. Okla. Aug. 16, 2018), in which a sister court granted a motion to strike class allegations finding causation issues will predominate over any common questions. However, the Court does not find *West* entirely on par with this case. Indeed, the Plaintiffs in *West* alleged the defendants, by injecting wastewater into the Arbuckle formation, caused earthquakes resulting in damage to the putative class member's properties. *West*, 2018 WL 8264338, at *1. The causation issues associated with determining whether certain defendants caused a particular set of earthquakes and whether those particular earthquakes caused damage to a

putative class member's property, is a far cry from the allegations in this case that Defendant's PEX pipes are defective at the outset and prematurely deteriorate and fail. Docket No. 2, at ¶ 10. To be clear, it may very well be the case that questions regarding the cause of certain leaks or property damage may predominate over the common questions in this action. However, the Court cannot find at this early stage of litigation that class certification is impossible. *See 1625 Riviera*, 2026 WL 776964, at *11 ("Whether this substantial common question predominates over questions regarding the causation of particular leaks cannot be determined at this early juncture. The Court cannot find at this early stage that 'the class requirements cannot possibly be met.'") (quoting *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007)); *See Carrico*, 2025 WL 967542, at * 24-25 (Finding "determining whether defects in the PEX installed in the putative members' homes . . . caused the leaks would require individual inquiries[,]" but allowing the action to proceed to class certification as narrowing the class may cure the defect.); *Francis v. APEX USA, Inc.*, 406 F. Supp. 3d 1206 (W.D. Okla. Feb. 5, 2019) ("Defendants' damages argument is also insufficient grounds upon which to strike the class allegations. The fact that damages may have to be ascertained on an individual basis is not, standing alone, sufficient to defeat class certification.").

*Economic Loss Doctrine.*   Next, Defendant maintains Plaintiffs' strict product liability claim must be stricken under the economic loss doctrine because the putative class contains members that suffered harm only to the product itself. "[T]he purpose of the economic loss rule is to preserve the boundary between tort and contract by precluding recovery for purely economic losses where contract remedies exist[.]" *Mills v. J-M Mfg.*

*Co., Inc.*, 2025 OK 23, at ¶ 20, 567 P.3d 385, 390. Under Oklahoma law, the economic loss doctrine provides that "no action lies in manufacturers' products liability for injury only to the product itself resulting in purely economic loss." *Waggoner v. Town & Country Mobile Homes, Inc.*, 1990 OK 139, ¶ 22, 808 P.3d 649, 653 (citing *E. River Steamship Corp. v. Transmerica Delaval, Inc.*, 476 U.S. 858 (1986)). As such, manufacturers' liability claims are precluded where there is no personal injury or property damage, but only damage to the product itself. *Dutsch v. Sea Ray Boats, Inc.*, 1992 OK 155, ¶ 31, 845 P.2d 187, 193-94 (1992) (finding plaintiff could collect damages for personal injury and damage to the product in a products liability action without bringing a separate breach of warranty claim to recover damages for economic loss). "It is broadly recognized that '[i]n its most widely accept form, the doctrine of economic loss bars the use of negligence or strict liability theories for recovery of economic losses arising out of commercial transactions where the loss is not a consequence of an event causing personal injury or damage to other property.'" *T.D. Williamson, Inc. v. Lincoln Elec. Automation, Inc.*, 2022 WL 16842907, at *4 (N.D. Okla. Jan. 21, 2022) (quoting 6 Phillip L. Bruner & Patrick J. O'Connor, Jr., *Bruner & O'Connor On Construction Law* § 19:10 (Aug. 2021 update)) (alterations in original).

Plaintiffs here have alleged they and the putative class suffered damage not just to their PEX pipes, but also to their personal property such as their plumbing systems, businesses, and personal residences. Docket No. 2, at ¶¶ 18 & 45. Although it seems likely that the class will include individuals who suffered no harm beyond the product itself, based on the Complaint the Court finds this issue is more appropriately addressed at the

class certification as Defendant has not conclusively shown that Plaintiffs' are unable to establish facts making class certification appropriate.

*Identifiable Injury*.  Lastly, Defendant argues Oklahoma law requires an identifiable injury and, because the proposed class definition includes individuals or entities who merely own homes or structures with Uponor PEX pipes, the Class includes individuals who suffered no injury. Although Defendant does not couch this argument in terms of Article III standing, standing is what is being challenged here. To establish standing, Plaintiffs must show "injury in fact, a causal relationship between the injury and the challenged action of the defendant, and a likelihood that the injury will be redressed by a favorable decision." *Faustin v. City & Cnty. of Denver, Colo.*, 268 F.3d 942, 947 (10th Cir. 2001) (citing *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998)). "Every class member must have Article III standing in order to recover individual damages." *Transunion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). As such, "[c]ourts do not allow consumers to bring claims against manufacturers for products that are perceived to be harmful, but that have not actually cause[d] an identifiable injury." *Harrison v. Leviton Mfg. Co., Inc.,* 2006 WL 2990524, at *5 (N.D. Okla. 2006).

Defendant, relying on *Harrison*, argues that the class allegations here must be stricken because the putative class includes individuals who have suffered no harm. In *Harrison* the plaintiff alleged he had not suffered any economic or personal injury at the time he had filed the lawsuit, and the court found dismissal appropriate because the "[p]laintiff's statements that he will suffer future economic harm and potential inconvenience from replacing any of defendant's receptacles in his home d[id] not create

a justiciable case or controversy." *Id.* at *4. Here, Plaintiffs do not merely allege future theoretical harm but instead allege there *was* damage to their and the class members' PEX pipes and properties. Docket No. 2, at ¶ 10 ("Uponor's heat treatment during the coating process is believed to have *damaged* the flexible tubing and caused it to prematurely deteriorate and fail, causing water leaks and resulting damage and preventing plumbing systems from functioning as they are intended."). The Court finds these allegations sufficient at this stage to establish Article III standing such that class certification does not appear inconceivable. *See Matzdorf v. Uponor, Inc.*, 2022 WL 17547941, at *5-6 (D. Colo. Aug. 24, 2022) (denying Defendant's motion to dismiss for lack of standing, finding "Plaintiffs have alleged that their PEX pipes are suffering from damage and that their homes and property have incurred damage as a result. How they determined such damage exists and the degree of damage are not issues required to be addressed at the pleadings stage, and Plaintiffs allegations of the injury themselves are sufficient to establish standing at this juncture.").

In sum, the Court finds Defendant has not met its "high standard of proof" to "demonstrate from the face of plaintiffs' complaint that it will be *impossible* to certify the class [as] alleged by the plaintiffs." *Anderson Living Tr.*, 2016 WL 5376325, at *7. Accordingly, the Court finds striking Plaintiffs' class allegations at this juncture is premature.

## CONCLUSION

For the reasons discussed herein, IT IS HEREBY ORDERED that the Motion of

Defendant Uponor Inc. to Strike Class Allegations [Docket No. 37] is hereby DENIED.

IT IS SO ORDERED this 9th day of April, 2026.

**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**

-14-